# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Sally Higginbotham                                Civil Action No. 6:09-0390

vs                                                Judge Tucker L. Melançon

South Central Towing Co., Inc        .            Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Great American

Insurance Company ("Great American") [Rec. Doc. 47], South Central Towing Co.,

Inc.'s ("South Central") opposition, *R. 53*, and Great American's reply memorandum, *R.*

*56*. For the following reasons, the motion will be granted.

### I. Background

The following undisputed facts form the basis of this action. Jessie B. Cobbs was

hired by South Central in November 2005. Great American, the insurer of South Central

since April 14, 1994, issued Policy No. OMH-738-83-77-12 to South Central effective

April 15, 2006 to April 15, 2007 ("the Policy"). As with the prior Great American

policies issued to South Central, the Protection and Indemnity portion of the Policy

contained a pre-employment /post offer medical examination and drug and alcohol screen

warranty. *R. 47, Exh. A, Depo. of Herbert Oubre, p. 32; Exh. C, Policy*. The Policy

provides in pertinent part:

PRE-EMPLOYMENT/POST-OFFER MEDICAL EXAMINATION AND
DRUG ALCOHOL SCREENING

In consideration of the premium basis on which this policy is issued,
subsequent to extending an offer of employment to a new crewmember and
prior to such crewmember reporting for duty, it is warranted by the assured
that a pre-employment/post-offer medical examination, including back X-rays
or MRI's and substance abuse screening, shall have been conducted and that
such medical examination shall indicate that the crewmember is in all respects
fit for duty and the results of the substance abuse screening shall be negative.

Failure to comply with this warranty will exclude all liability provided by this
policy to the assured, the crewmember, or anyone else as respects injury(ies),
and/or illness sustained by the crewmember.

*R. 47, Exh. C, Policy.*   South Central did not require that Cobbs undergo a pre-

employment/post-offer medical examination with drug and alcohol screen at the time he was

hired. *R. 47-3; R. 53, Exh. A, Depo of Oubre, pp. 27-28.*  In March 2006, after he was hired

by South Central, Cobbs underwent a random Coast Guard drug test which was reported as

negative. *Id.*

In late December 2006, Cobb was working as a deckhand aboard the *M/V Yancy O*.

During the New Year's Holiday in 2006-2007, he was the sole crew member and was

assigned to maintain the generator.  At some point on either December 31, 2006 or January

1, 2007, Cobbs left his post on the *M/V Yancy O* without notifying his employer, Herbert

Oubre, the president of South Central.  *R. 53, Exh. A, Depo of Oubre, pp. 34-46.*  Oubre

spoke to Cobbs following his departure from the *M/V Yancy O* in early January 2007 and

Cobbs advised him that he had been injured on the boat.  *Id.*  At that point, Oubre ordered

-2-

Cobbs to go to Dr. Walter Daniels in Morgan City, Louisiana for treatment. *Id.* Cobbs saw Dr. Daniels for a few weeks and then was released to go back to work. *Id.* Approximately one week later while he was working on another South Central vessel, the *M/V Miss Jo Ann*, Cobbs reported to the captain that he hurt himself again when he was picking up a rope or a cable. *Id. at pp. 47-52.* Following the second incident, Oubre once again brought Cobbs to Dr. Daniels for treatment. A drug test was performed on January 22, 2007 and was reported as negative. *Id.* Following the second January 2007 incident, Cobbs never returned to work for South Central, and he subsequently died due to illnesses unrelated to his alleged work injury.

Plaintiff, Sally Higginbotham, individually and as personal representative of the Jessie B. Cobbs Estate, Jr., filed an original Complaint against South Central, as owner and operator of the *M/V Yancy O*, on January 1, 2009. *R. 1.* On April 19, 2009, Higginbotham filed an Amended Complaint naming Great American as South Central's liability insurer. *R. 14.* South Central filed a Cross-claim against Great American on April 29, 2009. *R. 19.* In the motion at bar, Great American moves the Court to dismiss plaintiff, Sally Higginbotham's, and co-defendant and cross-claimant, South Central's, claims against it.

## II. Analysis

In its motion, Great American contends that South Central breached the warranty contained in the Policy by failing to have Cobbs undergo a pre-employment/post-offer medical examination and drug and alcohol screen prior to going to work for South Central.

Great American further contends that under the Policy, New York law applies by virtue of the choice of law provision contained in the Policy and, under New York law, the breach of warranty precludes coverage for the claims asserted in this matter.  South Central does not contest the fact that New York law applies, but argues that New York law does not void the policy or defeat coverage under the facts of this case.

The parties agree that the Policy is a contract for marine insurance that falls within the admiralty jurisdiction of the Court.  *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir.1998).  Marine insurance policies are governed by federal admiralty law when there is an established federal rule, and by state law when there is not.  *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 305-06 (2d Cir.1987).  Because there is no specific federal rule governing the construction of marine insurance contracts, New York law applies.  *See Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir.1999).  New York law therefore determines "the scope and validity of the marine insurance policy provisions involved and the consequences of breaching them."  *Advani*, 140 F.3d at 162 (internal quotations omitted).

Southern Central concedes that the pre-employment/post-offer medical examination and drug and alcohol screen provision contained in the Policy is considered a "warranty."  New York Insurance Law § 3106 defines warranty and the effect of a breach as follows:

> (a) In this section "warranty" means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability

-4-

thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract. The term "occurrence of loss, damage, or injury" includes the occurrence of death, disability, injury, or any other contingency insured against, and the term "risk" includes both physical and moral hazards.

(b) A breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not avoid such contract or defeat recovery thereunder with respect to any kind or kinds of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.

(c) <u>This section shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit, or transportation,</u> including war risks, on, over or under any seas or inland waters, nor shall it affect any provision in an insurance contract requiring notice, proof or other conduct of the insured after the occurrence of loss, damage or injury. (emphasis supplied).

South Central argues, however, that the warranty at issue (requiring a pre-employment physical and drug screen) does not have any relation to "risks or perils of navigation, transit or transportation", nor does it have anything to do with South Central's obligation regarding "notice, proof or other conduct" after plaintiff's alleged injury." *R. 53*. Consequently, South Central contends, the provisions of §3106 (b) apply to the Policy and South Central's alleged breach of the pre-employment/post-offer warranty does not void the Policy or defeat coverage unless the breach "materially increases the risk of loss, damage or injury within the

coverage of the contract." *Id.*

A warranty is a promise by the insured to do or not to do something that the insurer considers significant to its risk of liability under an insurance contract. *Commercial Union*, 190 F.3d at 31. Warranties hold a special status under the law governing maritime insurance contracts. *Id.* While in all other areas of insurance, an insured will generally not be precluded from recovery if the insured breaches a warranty that is collateral to the primary risk, warranties in maritime insurance contracts must be strictly complied with. *Commercial Union*, 190 F.3d at 31. New York's Insurance Law specifically carves out a maritime exception from its general rule regarding breach of collateral warranties. *Id.* at 32 *citing* N.Y.Ins.L. § 3106(c) ("This section [stating that breach of collateral warranties shall not preclude recovery] shall not affect the express or implied warranties under a contract of marine insurance."). Under New York law, recovery under a marine insurance contract is precluded if a warranty is breached, regardless of its materiality to the insurers risk. *See Commercial Union*, 190 F.3d at 32. As the Second Circuit explained, "[t]he rule of strict compliance with warranties in maritime insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on representations and warranties made by insureds regarding their vessels' condition and usage." *Id.* at 31-32. In addition, § 3106(c) exempts marine insurance contracts from the general rule that a breach of a warranty must be material in order for the insurer to disclaim coverage. *Id.* at 32.

-6-

South Central maintains that its alleged initial breach of the pre-employment/post offer warranty "did not cause the loss, it did not contribute to this accident, and it had virtually no impact on the risk associated with the underlying coverage." *R. 53.* South Central argues that the cases cited by Great American recognizing that an expressed warranty must be literally complied with and non-compliance forbids recovery, regardless of whether the omission had causal relation to the loss, are inapposite to this case because they involve warranties regarding the operation or safekeeping of the insured vessel. *Id.* Thus, South Central maintains, under the facts of this case, Great American is required by §3106(b) to establish that South Central's breach of the alleged warranty "materially" increased the risk of loss, damage or injury within the coverage of the Great American policy. *Id.*

The cases cited by Great American do not address the pre-employment/post offer warranty involved in this case. They do, however, provide a wide range of warranty breaches, all of which mandate the voiding of coverage under §3106(c)[1]. Conversely, South Central has failed to direct the Court to any cases or statutory interpretation which require

_____

[1] Great American cites the following cases in support of its position that a breach of warranty in a marine insurance policy voids coverage: *Lavine v. Aetna Ins. Co.*, 139 F.2d 217 (2d Cir. 1943)(failure to have a search light on board); *Cunningham v. Ins. Co. of North America*, 521 F.Supp. 2d 166, 180 (E.D.N.Y. 2006) (failure to comply with a layup warranty); *Newark Ins. Co. V. Blair*, 1994 WL 4410 (S.D.N.Y, January 3, 2004) (failure to comply with a "Transfer of Interest" warranty); *Continental Seafoods, Inc. v. New Hampshire Fire Ins. Co.*, 1964 AMC 196 (S.D. N.Y. 1963) (failure to obtain a governmental certification prior to shipment); *Commercial Union Ins. Co. Flagship Marine Service, Inc.*, 190 F.3d 26 (2d Cir. 1999) (breach of a towage warranty); *Hartford Fire Ins. Co. v. Mitlof*, 208 F.Supp. 2d 407 (S.D.N.Y. June 26, 2002) (breach of the total number of passengers on board warranty); *Kron v. Hanover Fire Ins. Co.*, 246 N.Y.S. 2d 848 (N.Y. 1964) (breach of the prohibition against keeping gasoline or explosives on board warranty); *Jarvis Towing and Transportation Corp. v. Aetna Ins. Co.*, 298 N.Y. 280 (1948) (the failure to have a watchman on board); *Ina v. Zaglool*, 526 F.Supp. 2d 361 (S.D.N.Y. 2007) (a named operator warranty).

establishing that the breach of warranty in a marine insurance policy materially increases the risk of loss, damage or injury - in a matter such as this one or in any other case.  Moreover, the Court notes it is a "well established admiralty principle that a vessel owner has a duty to use 'due and proper care' to provide a competent crew" and that "a vessel being operated by an incompetent crew is considered unseaworthy." *In re Complaint of Messina*, 574 F.3d 119, 127 (2d Cir., 2009).  The Court finds that the pre-employment/post offer warranty was related to "risks or perils of navigation, transit or transportation" as provided under §3106(c) and South Central's breach of the warrant voids its coverage under the Policy.

In light of the foregoing, it is not necessary for the Court to address Great American's alternative argument that there is no coverage for plaintiff's claim for punitive damages under the Policy.  However, even assuming *arguendo* that the Policy provided coverage despite the breach of warranty, the Policy does not provide coverage for punitive damages by its clear language.

The Policy states in pertinent part:

PUNITIVE/EXEMPLARY DAMAGE EXCLUSION - Not withstanding anything to the contrary contained herein, it is understood and agreed no liability attaches to the assurers for any loss, damage, cost, expenses, fine or penalty of any kind or nature whatsoever, whether statutory or otherwise, imposed upon the assured as punitive or exemplary damages.

Thus, as the plain language of the Policy excludes coverage for punitive damages and as neither South Central nor plaintiff has provided any support in opposition to the motion,

-8-

Great American would be entitled to summary judgment as to the punitive damage claim, in any event.

### III. Conclusion

The Court, finding the existence of no issues of genuine material fact, will grant Great American's motion in that South Central's failure to require Cobbs to undergo a pre-employment/post offer medical examination with drug and alcohol screen when he was hired was in violation of a specific warranty in the marine policy issued to South Central by Great American which voids coverage.  The Court further finds that, even if coverage under the Policy was not voided, the Great American Policy issued to South Central excludes coverage for punitive damages.